CRAIG A. HARBAUGH (Bar No. 194309)
HARBAUGH LAW, PC
360 E. 2nd Street, Suite 800
Los Angeles, California 90012
Tel:    (213) 986-8656
Email: craig@harbaugh.law

Attorney for Mr. Henley
EUGENE HENLEY, JR.

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>*Plaintiff*,<br><br>v.<br><br>EUGENE HENLEY, JR., *et al*,<br>*Defendant*. | No. 2:25-cr-00211-FLA-1<br><br>***EX PARTE* APPLICATION FOR TEMPORARY RELEASE TO ATTEND RELIGIOUS BURIAL CEREMONY** |

**TO THE HONORABLE COURT:**

Mr. Henley Eugene Henley, Jr., by and through his counsel of record, Craig A. Harbaugh and Peter Johnson, moves this Court pursuant to 18 U.S.C. § 3142(i) for temporary, supervised release from pre-trial detention to participate in mandatory Islamic religious rites for his recently murdered son.

This request is based upon the attached memorandum of points and authorities and the declaration of counsel.  The Government opposes this request.

Respectfully submitted,

Dated: November 12, 2025      */s/ Craig A. Harbaugh*
                              CRAIG A. HARBAUGH
                              Attorney for Eugene Henley, Jr.

## I. INTRODUCTION

The death of one's child represents an unparalleled human tragedy. The opportunity to attend and participate in the funeral rites is not merely a matter of personal preference, but a fundamental expression of human dignity recognized across cultures and legal systems. Mr. Henley and his children are devout Muslims. Consistent with their faith, the family must fulfill solemn religious rites prior to his son's burial. This includes the ritual washing (Ghusl al-mayyit) and shrouding (Kafn) of the body.

Federal law explicitly provides for temporary release when there is a "compelling reason," and no reason could be more compelling than allowing a parent to perform the last acts of love and faith for their child—both to say farewell and to fulfill mandatory religious duties at the time of death. *See* 18 U.S.C. § 3142(i). This Court has the statutory authority and judicial discretion to grant this relief, and courts within this District have done so. *See, e.g., United States v. Walter*, No. 2:19-cr-00594-ODW (C.D. Cal.) (granting temporary release to attend a family funeral).

Mr. Henley acknowledges the Government's interests in ensuring appearance at trial and protecting public safety. This motion proposes stringent conditions—including continuous electronic surveillance, independent private security detail, a limited and defined itinerary aligned precisely with ISOC's religious schedule, secured bond, and cost-bearing by Mr. Henley's family—that fully address those interests while permitting Mr. Henley to undertake this irreplaceable act of parental devotion and religious duty. Indeed, Mr. Henley is seeking only to participate in the private rituals starting Friday morning, not the Saturday burial.

To deny this narrow request would inflict an additional, profound layer of suffering upon a parent already enduring the unimaginable grief of burying their child, by preventing them from fulfilling sacred religious obligations and participating in a final, essential farewell. This Court has the power to mitigate this suffering without compromising justice or public safety.

## II. STATEMENT OF FACTS

### A. Murder of Jabari Henley

On the night of Friday, October 31, 2025, Mr. Henley's first born, 34-year-old Jabari Henley, was tragically shot and killed in South Los Angeles. The fatal shooting occurred just after 11:00 p.m. near Figueroa Street and 69th Street in the Vermont–Slauson neighborhood. Firefighters pronounced his son dead at the scene.

Earlier that evening, Jabari Henley had been participating in a community "trunk-or-treat" event—an activity designed to provide a safe, family-friendly environment for children and neighbors. After leaving the event, Jabari Henley had a quiet dinner with his family. Within hours, Mr. Henley was gunned down in a parking lot when assailants opened fire from a vehicle before fleeing. No one has been arrested for his murder.

### B. Islamic Burial Rituals Practiced By Mr. Henley and His Family

Mr. Henley and his family, including Jabari, practice the Islamic faith. In Islam, care for the deceased is a sacred duty emphasizing respect, dignity, and swift return to God. The first step is the ritual washing (Ghusl al-mayyit). The body is washed a number of times, with camphor or scented substances used in the final rinse. Next is the shrouding of the body (Kafn). The deceased is wrapped in plain white cloth in accordance with the Sunnah, symbolizing equality and purity before God. Ghusl al-mayyit and Kafn are core rites performed with dignity and modesty; participation by immediate family, including the parent, is a time-honored duty. Next is the funeral prayer (Salat al-Janazah). This prayer is a communal obligation performing standing, without bowing or prostration.

The final step is the burial (Dafn). The body is gently placed directly into the earth, carefully oriented to face the Qibla (the direction of Mecca). Family and attendees participate by symbolically placing handfuls of soil into the grave, often reciting a prayer acknowledging humanity's return to the earth from which it came.

///

**C. Scheduled Islamic Rites for Jabari Henley**

Kenyatta Omar of ISOC Mortuary Services (Islamic Society of Orange County, 9752 13th Street, Garden Grove, CA 92844) has confirmed the following schedule and requirements based on Islamic religious practice and ISOC protocols:

November 21, 2025 (Friday, the holiest day in Islam):

9:00–10:00 a.m.: Ghusl al-mayyit (ritual washing). Immediate family participation.

10:00 a.m.–12:45 p.m.: Kafn (shrouding) and private family time. This is a closed, intimate observance with immediate family only.

1:15–2:00 p.m.: Friday congregational prayer (Jumu'ah) at the mosque, followed immediately by Salat al-Janazah (the funeral prayer). Immediate family presence for Salat al-Janazah is integral.

November 22, 2025 (Saturday):

3:00 p.m.: Burial (Dafn) with family participation, including interment practices in accordance with Islamic tradition.

Decl. of Craig A. Harbaugh, ¶¶ 3-5.

These rites are mandated by Islamic precepts. Mr. Henley's absence would deprive him of the ability to fulfill these religious obligations for his child. Although Mr. Henley would like to attend the Saturday burial, he is mindful of the nature of his request and does not seek to attend. His request is limited to an opportunity to participate in the private rituals of washing and shrouding of the body followed by burial prayer.

**D. Mr. Henley's Deep Community Ties and Positive Impact**

Defendant Eugene Henley is deeply rooted in the Los Angeles community and has long been recognized as a positive influence on those around him. The numerous letters attached from family members, friends, community leaders, and local professionals—paint a consistent and compelling portrait of a man whose life has been defined by compassion, mentorship, and service to others. *See* Exhibit A.

Mr. Henley's supporters describe him as a "pillar of our community" who has "dedicated himself to assisting at-risk youth and reentry clients, guiding them as they transition back into society." Ex. A at 2 (Letter of Steven Epstein). Through his volunteer work and mentorship, Mr. Henley has "played a vital role in fostering hope and positive change" for young people and returning citizens, offering them the kind of encouragement and structure that many lacked elsewhere. *Id.*

Mr. Henley's family members echo this sentiment, emphasizing his example as a father, husband, and role model. In their joint letter, the Henley family describes him as "one of the strong heartbeats of our family—a steady presence whose guidance and faith have shaped generations." They explain that he "took great pride in teaching his son the values of manhood, family, and responsibility," and that his presence has been foundational to their family's strength and unity. Ex. A at 3-4 (Letter of Henley family).

The letters further demonstrate that Mr. Henley's impact reaches far beyond his own household. Kyree Toadvine, a Los Angeles Firefighter-Paramedic, writes that Mr. Henley's mentorship and example inspired him to a life of public service and that he now seeks to "be a strong part of the support system that helped make me the man I am today." Ex. A at 16.

Others echo these themes of leadership and compassion. Sharneal Shorts, a family friend, notes that Mr. Henley "has taken meaningful steps toward personal growth, maintained good conduct, and expressed sincere remorse for his past actions," showing a commitment to rehabilitation and to "becoming a better man and father." Ex. A at 14. La'loni Dale likewise describes him as "a devoted father, community mentor, and a man who values family deeply." Ex. A at 9.

Taken together, these heartfelt endorsements reflect not only Mr. Henley's enduring community ties but also his broader positive impact. His work with youth and reentry programs, his guidance of younger relatives who now serve the City of Los Angeles, and his steadfast presence in family and community life all confirm that

he is a man of faith, redemption, and social value. Granting his temporary release under strict supervision would not only allow him to fulfill his religious and parental duties during this devastating loss, but also reaffirm the compassion and humanity that his life has come to represent within his community.

**E. Proposed Conditions to Ensure Custody and Safety**

Mr. Henley seeks no unsupervised time and proposes the following:

(1) Continuous electronic monitoring controlled by the United States Probation Office;[1]

(2) Private security detail independently controlled by an outside third-party

(3) Affidavit of surety secured by a reasonable cash amount.

(4) Limited, specific itinerary between MDC-LA and ISOC mortuary/mosque, with no deviations absent logistical necessity, departing at 8:00 a.m. and return promptly after Janazah no later than 4:30 p.m.;

(5) No-contact restrictions as to any witnesses/co-defendants/alleged victims;

(6) All costs borne by Mr. Henley's family or designated responsible third party; and

(7) Any additional conditions the Court imposes.

/ / /
/ / /
/ / /

---

[1] The United States Probation Office represented that if ordered by the Court, they would be able to provide location monitoring for Mr. Henley during his temporary release. Harbaugh Decl., ¶ 8.

## III. LEGAL STANDARD

Section 3142(i) authorizes temporary release "in the custody of a United States marshal or other appropriate person" where "necessary for preparation of the person's defense or for another compelling reason." Rule 46 authorizes modification of conditions. The Bail Reform Act's purposes are regulatory, not punitive; conditions must be the least restrictive means to ensure appearance and safety. *See United States v. Salerno*, 481 U.S. 739, 747–48 (1987); 18 U.S.C. § 3142(j).

The statute does not define "compelling reason," leaving courts discretion to consider extraordinary circumstances. For examples, courts have recognized that serious medical needs qualify as a "compelling reason." *United States v. Randall*, No. 04-cr-40044-CW-8 (VKD), 2020 U.S. Dist. LEXIS 245360, at *5 (N.D. Cal. Dec. 31, 2020) ("A number of courts have concluded that a serious health issue or medical condition can constitute a compelling reason for temporary release under this provision."); *see, e.g., United States v. Keeton*, 457 F. Supp. 3d 855, 859 (E.D. Cal. 2020), *aff'd*, No. 20-10162, 2020 U.S. App. LEXIS 19012, 2020 WL 4805479 (9th Cir. June 17, 2020). Similarly, humanitarian and religious needs, such as funeral attendance, can qualify as compelling reasons. *See, e.g., United States v. Reaves*, No. 2:19-cr-00594-ODW (C.D. Cal. May 10, 2021) (Dkt No. 96) (temporary release to attend a family funeral).

It is important to note that federal law and BOP practice recognize temporary release/furloughs for family crises, including funerals, for convicted persons. See 18 U.S.C. § 3622; 28 C.F.R. § 570.32(a)(3). A pre-trial detainee, who is presumed innocent, should receive at least equal consideration.

## IV. ARGUMENT

### A. Participation in Mandatory Islamic Rites Is a Compelling Reason

The upcoming religious services surrounding the burial of Mr. Henley's son establish a compelling reason for his temporary release. Islam prescribes specific funeral practices with immediate family participation, especially the parents. ISOC's

schedule confirms the timing and necessity of Mr. Henley's presence on Friday for the washing, shrouding, private family observances, Jumu'ah, and Janazah. Although Mr. Henley would prefer to be present for the burial, he is mindful of the time away of custody and is prepared to forego the burial services on Saturday. Harbaugh Decl., ¶ 6. Denial of release would permanently foreclose Mr. Henley's ability to fulfill mandatory religious obligations for his child and to perform the last acts of love and faith in the moment of profound parental grief.

### B. Comprehensive Supervision and Fixed Itinerary Fully Protect Government Interests

Mr. Henley respectfully seeks temporary release under a comprehensive, highly restrictive regime that fully addresses appearance and public safety concerns while permitting attendance at mandated religious rites. He will be subject to continuous electronic monitoring controlled by the United States Probation Office; escorted at all times by an independently managed private security detail retained by a third party; and secured by an affidavit of surety backed by a reasonable cash amount approved by the Court. His movements will be strictly limited to a fixed itinerary between MDC–Los Angeles and the ISOC mortuary/mosque, departing at 8:00 a.m. and returning promptly after Salat al-Janazah, and in no event later than 4:30 p.m., with no deviations absent logistical necessity approved by Probation. He will have no contact with any witnesses, co-defendants, or alleged victims during the release period. All costs associated with monitoring, private security, and transportation will be borne by Mr. Henley's family or a designated responsible third party. These layered safeguards—electronic monitoring, private security, financial surety, a precise schedule, strict no-contact restrictions, and full cost-shifting—constitute the least restrictive means necessary to accommodate the compelling religious need while fully protecting the government's interests.

/ / /

/ / /

## V. CONCLUSION

This narrowly tailored, fully supervised request is necessary to allow a grieving parent to fulfill mandatory, time-sensitive Islamic funeral rites for his child—rites integral to the faith and impossible to replicate. Section 3142(i) expressly empowers courts to accommodate compelling reasons, and courts have recognized compelling grounds including funerals. With continuous electronic monitoring strict limitations, the government's interests are fully protected. The motion should be granted.

Respectfully submitted,

Dated: November 12, 2025   */s/ Craig A. Harbaugh*
CRAIG A. HARBAUGH
Attorney for Eugene Henley, Jr.

## DECLARATION OF CRAIG A. HARBAUGH

I, Craig A. Harbaugh, declare:

1. I am an attorney licensed to practice law in the State of California and am counsel of record for Defendant [Defendant's Full Name] in the above-captioned matter. I make this declaration in support of Defendant's Motion for Temporary Release from Custody pursuant to 18 U.S.C. § 3142(i).

2. I spoke directly with Mr. Kenyatta Omar, who is affiliated with ISOC Mortuary Services, located on the property of the Islamic Society of Orange County (9752 13th Street, Garden Grove, California 92844). Mr. Omar provided detailed information regarding the religious and ceremonial schedule for the funeral of Defendant's [relation, e.g., son/daughter].

3. Mr. Omar explained that, in accordance with Islamic law and custom, the funeral rites will occur over two days—Friday and Saturday—and that these rites are religious obligations that must take place promptly following death. The schedule and details he relayed are as follows:

   a. Friday (the holiest day in Islam):

   9:00 a.m. – 10:00 a.m.: Ritual washing of the body (Ghusl al-mayyit), a sacred rite normally performed by same-gender family members or religious attendants. Mr. Omar stated that the parents—particularly the father—are expected to participate in this rite.

   10:00 a.m. – approximately 12:30 to 12:45 p.m.: Shrouding of the body (Kafn) and private family time for immediate family only; the gathering is intimate and not open to the public.

   1:15 p.m. – 2:00 p.m.: Friday congregational prayer (Jumu'ah) held at the mosque, followed immediately by the funeral prayer (Salat al-Janazah) attended by

members of the congregation.

      b.    Saturday (Burial):

3:00 p.m.: Burial (Dafn) to occur in accordance with Islamic tradition, with immediate family members participating in final supplications and interment.

    4.    Mr. Omar emphasized that these rites follow Islamic religious law and the family's participation—especially the parents' participation —is a meaningful religious obligation that cannot be performed by proxy or delayed.

    5.    Mr. Omar confirmed that the events on Friday—the washing, shrouding, private family observance, and Janazah prayer—are mandatory and time-bound components of the Islamic funeral process, constituting both a personal and religious duty for the parent. The Saturday burial signifies the conclusion of those religious rites.

    6.    Mr. Henley is mindful of the time involved for both the Friday and Saturday services.  Accordingly, Mr. Henley only seeks to be present for the Friday morning/early afternoon rituals before returning to custody.

    7.    On November 12, 2025, I received an email from the United States Marshals Service (USMS) regarding Defendant's request for temporary release. The USMS stated that their policy directives (specifically Policy Directive 9.45, Statement 6) prohibit them from transporting prisoners to funerals, and therefore, they must deny the request for USMS transport. However, the USMS outlined alternative options, including the Court issuing a release order for a determined period, arranging a private visitation with the deceased's body at a location with better operational control (such as a funeral home transporting the body to a sallyport), or utilizing video teleconferencing (VTC) for attendance at the funeral, with all expenses for these alternatives to be borne by the prisoner.

8.   On November 12, 2025, I received a response from the United States Probation Office (PSA) regarding Mr. Henley's proposed temporary release. PSA explained that it does not take positions on such requests and would not itself provide transportation or escort to services. With respect to location monitoring (LM), PSA indicated that feasibility depends on the duration of the release: installing and removing an ankle monitor for only a few hours can be operationally cumbersome, whereas LM is more readily appropriate if the release spans a longer period. PSA confirmed, however, that if the Court orders LM, PSA will comply.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on November 12, 2025, in Los Angeles, California.

*/s/ Craig A. Harbaugh*
CRAIG A. HARBAUGH
Attorney for Eugene Henley, Jr.