Kristen N. Richards (Bar No. 277217)
Anthony M. Solis, APLC
23679 Calabasas Road, Suite 412
Calabasas, CA 91302
Email: knrichards85@gmail.com
Telephone: (310) 940-9624
Facsimile: (213) 489-5923

Attorney for Defendant
MARK MARTIN

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>HENLEY, ET AL.,<br>MARK MARTIN (3)<br>Defendant. | Case No. 2:25-cr-00211-FLA<br><br>**DEFENDANT MARK MARTIN'S NOTICE OF MOTION AND MOTION TO SUPPRESS**<br><br>Hearing Date: March 13, 2026<br>Hearing Time: 1:30 P.M. |

TO: THE UNITED STATES ATTORNEY FOR THE CENTRAL DISTRICT OF CALIFORNIA:

PLEASE TAKE NOTICE that at the time and place specified above, as set by the Court, in the Courtroom of the Honorable Fernando L. Aenlle-Rocha, United States District Judge, defendant Mark Martin will bring for hearing the following motion to suppress (1) the March 24, 2023 wiretap warrant authorizing the interception of Target Telephone #4, (2) the May 30, 2023 search warrant for 1613 W. 134th Street, Gardena, California 90249, and (3) the June 6, 2023 wiretap warrant authorizing the interception of oral communications at 1613 W. 134th Street, Gardena, California 90249.

This motion is based on the attached memorandum along with all files and records in this case and any other information requested by this Court.

Dated: February 6, 2026 Respectfully Submitted,

KRISTEN N. RICHARDS
Anthony M. Solis, APLC

*/s/ Kristen N. Richards*

By: Kristen N. Richards
Anthony M. Solis, APLC
Attorney for Mark Martin

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Mark Martin moves to suppress the evidence obtained as a result of the March 24, 2023 warrant authorizing (1) the interception of wire communications, (2) the installation and use of a pen register and a trap and trace device, and (3) the release of subscriber information. Exhibit A (Bates USAO_10209-10309). The affidavit for a showing of probable cause was authored by FBI Special Agent Andrew J. Roosa. Id. As it pertains to Mr. Martin, the warrant authorized the interception of wire communications related to Target Telephone #4, 323-703-7362, Mr. Martin's cellular telephone number. Id. at 19.

Mark Martin also moves to suppress the evidence obtained as a result of the May 30, 2023 warrant authorizing the search and seizure, as it related to Mr. Martin and "The Shop" located at 1613 West 134th Street, Suite 3, Gardena, CA 90249, of (1) wireless network information, (2) door lock measurements in order to create a duplicate key, (3) photographs of the exterior and door locks, (4) information related to exterior cameras, (5) information related to the location of any communications cabinet or hard-wired ingress, and (6) the specific radio frequency band operating the electronic access gate. Exhibit B (Bates USAO_7398-7431).

Mark Martin additionally moves to suppress the evidence obtained as a result of the June 6, 2023 warrant authorizing the placement of surveillance equipment capable of recording oral communications made at "The Shop", as it related to Mr. Martin and/or Mr. Henley, located at 1613 West 134th Street, Suite 3, Gardena, CA 90249. Exhibit C (Bates USAO_40834-40923)

## II. STATEMENT OF FACTS

The March 24, 2023 wiretap warrant at issue here was sought and obtained after three prior wiretap warrants were obtained and executed. The various wire communications obtained through the execution of those warrants are the primary basis for the affidavit in support of probable cause of the March 24, 2023 wiretap application.

Each prior warrant listed below is the subject of motions to suppress filed by co-defendant Eugene Henley and are based on the affidavit by SA Roosa in the initial wiretap application filed with this Court on November 2, 2022. *See* 2:22-cm-00221-FLA, Dkt. 3. As argued by Mr. Henley, the probable cause in that affidavit wholly mischaracterized and fabricated events and communications that built the structure on which the probable cause stood.

On November 2, 2022, this Court signed an order authorizing the interception of wire and electronic communications, amongst other items, in relation to Target Telephone #1 (TT1), a phone used by Mr. Henley. Exhibit A, pg. 46. This warrant seized wire and electronic communications made on TT1 from November 3, 2022 through December 2, 2022. Id.

On December 20, 2022, this Court signed an order authorizing the interception of wire and electronic communications, amongst other items, in relation to TT1, used by Mr. Henley. Id. This warrant seized wire and electronic communications made on TT1 from December 20, 2022 through January 19, 2023. Id.

On February 6, 2023, this Court signed an order authorizing the interception of wire and electronic communications, amongst other items, in relation to TT1 used by Henley, TT2 used by Sylvester Robinson, and TT3 used by Zihirr Mitchell. Id. at 46-47. This warrant seized wire and electronic communications made by TT1, TT2, and TT3 from February 6, 2023 through March 7, 2023. Id.

Here, the March 24, 2023 wiretap warrant, following the application made before and the order signed by this Court, seized communications, amongst other items, made by Mr. Martin while using TT4 from on or around March 24, 2023 through April 25, 2023. Ex. A. This wiretap warrant was based on the fruit of the illegal wiretap warrants above. The probable cause used in the March 24, 2023 affidavit for seizure of communications made on TT4 and the probable cause used in the May 30, 2023 and June 6, 2023 warrants relating to The Shop nearly wholly rely on fruits gained from the prior wiretap warrants listed above – and which Mr. Henley separately argues should be

suppressed. For example, SA Roosa attests that "[b]ased on my review of the intercepted communications and my review of an active pen register installed on the TARGET TELEPHONES, I believe . . . that both HENLEY and MARTIN are using TARGET TELEPHONE #4 to commit the Target Offenses." Exhibit A at 54 (¶34).

Similarly, the May 30, 2023 and June 6, 2023 warrants relating to The Shop were fruits of the illegal wiretap warrants above and were also supported by insufficient probable cause based on material mischaracterizations of the facts by FBI Special Agents Ramesh Ganesh (5/30/23 Affidavit) and Andrew Roosa (6/6/23 Affidavit) along with the information being stale.

As detailed in the May 30, 2023 Affidavit ("May Affidavit"), "according to information obtained from wire interceptions, HENLEY, ROBINSON, and MARTIN utilize [The Shop] as a **base of operations** to discuss the SUBJECT OFFENSES." Ex. B at 9, emphasis added. SA Ganesh also attests that "after Las Vegas detectives made inquiries about the 2021 homicide with Stacey Henley . . . HENLEY immediately called MARTIN and **directed** him to meet him at [The Shop]." Id., emphasis added. The **only** time that Mr. Henley and Mr. Martin had alleged illicit conversations which were followed by meeting up at The Shop were on February 14 and 15, 2023 after homicide detectives from Las Vegas, Nevada, descended upon Los Angeles to attempt to interview Mr. Henley and others about the murder of R.W.

## III. ARGUMENT

The Fourth Amendment of the United States Constitution governs all searches and seizures conducted by government agents. *U.S. Const. amend. IV*. The Supreme Court has adopted a two-part test to determine whether a search violated a person(s)' legitimate expectation of privacy. *Smith v. Maryland*, 442 U.S. 735, 750 (1979), citing *Katz v. United States*, 389 U.S. 347, 361 (1967). The individual must (1) have a subjective expectation of privacy in a place or thing, and (2) have an expectation of privacy that society is prepared to recognize as reasonable. *See Katz*, 389 U.S. at 351, 361. Evidence obtained during the execution of a warrant that lacks probable cause

"should generally be suppressed under the exclusionary rule." *United States v. Fisher*, 56 F.4th 673, 683 (9th Cir. 2022).

As a preliminary matter, the March 24, 2023, along with the May 30, 2023 and June 6, 2023, warrant affidavits were fruit of the illegal warrants from November 2, 2022, December 20, 2022, and February 6, 2022 before them, for which co-defendant Henley filed a separate motion to suppress. "[E]vidence obtained as a direct result of an illegal search and seizure may not be used to establish probable cause for a subsequent search." *United States v. Barajas-Avalos*, 377 F.3d 1040, 1054 (9th Cir. 2004).

**A. Mr. Martin Had A Reasonable Expectation Of Privacy For His Phone And At "The Shop."**

The whole reason why law enforcement and the government must obtain authorization via a warrant to place a wiretap on a specific target telephone is because of the long-held expectation of privacy in one's phone calls as afforded by the Fourth Amendment of the U.S. Constitution and to intrude on such an expectation of privacy requires a showing of probable cause made in support of the warrant. *U.S. Const. amend. IV*, see also *United States v. Garza*, 980 F.2d 546, 550 (9th Cir. 1992). The wiretap application made on March 24, 2023 identifies that Target Telephone #4 (TT4), is believed to be used by Mr. Martin and is subscribed to him. Ex. A, pg. 19 ¶c. As the warrant, as it pertains to TT4, is specifically in relation to Mr. Martin as both the user and subscriber, Mr. Martin has standing to challenge this warrant.

The warrants and their applications made on May 30, 2023 and June 6, 2023 in relation to "The Shop," located at 1613 West 134th Street, Suite 3, Gardena, CA 90249, are specifically related to Mr. Martin. Exs. B and C. In the May 30, 2023 probable cause attestation, SA Ganesh declares that "[d]uring the course of the investigation, the LAMTFVG learned that Martin operates [The Shop]." Ex. B at ¶7. Mr. Martin, along with a handful other individuals, operated The Shop as a private location that was used to store, restore, and build the various classic cars owned by them. They informally named their car club "Under the Hood Muscle Cars" and shared an affinity for classic

cars. The Shop was not operated as a public auto body shop where the public could bring their cars for repair. This is indicated in "Figure 2" attached to the June 6, 2023 warrant application, where the map shows various businesses on the map, but only lists The Shop by its address – as this was not a commercial business open to the public. Ex. C at 27. The May 30, 2023 affidavit seems to confirm both Mr. Henley and Mr. Martin's expectation of privacy in the location in that on a February 14, 2023 phone call, Mr. Henley indicated that he wanted to meet with Mr. Martin, who was already at The Shop, to discuss homicide detectives' attempt to speak with him. As SA Ganesh attests, "I also believe that HENLEY wanted to avoid speaking about the homicide over the phone and instead use [The Shop] as a platform to discuss his culpability related to the homicide." Ex. B, pg. 18. SA Ganesh further details that he believed "HENLEY was telling MARTIN that he would meet with him inside of [The Shop] to discuss his involvement with the homicide to avoid such interception." Id. at 19. This confirms that Mr. Henley and Mr. Martin believed that they had an expectation of privacy at The Shop.

**B. The March 24, 2023, May 30, 2023, and June 6, 2023 Warrants Should Be Suppressed As Fruits Gained From Illegal Warrants.**

**1. The March 24, 2023 Warrant Must Be Suppressed As It Relies On Evidence Obtained Through Prior Illegal Warrants.**

The underlying probable cause for the March 24, 2023 warrant, as it relates to TT4 and Mr. Martin, is solely based on the calls and pen registers intercepted pursuant to the prior wiretap warrant applications and orders for Mr. Henley's phone on November 3, 2022, December 21, 2022, and February 6, 2023. As SA Roosa explained in his affidavit of probable cause, "[b]ased on my review of the intercepted communications and my review of an active pen register installed on the TARGET TELEPHONES . . . I believe . . . that both HENLEY and MARTIN are using [TT#4] to commit target offenses." Ex. A, pg. 54. The affidavit also contains a summary of calls that were intercepted on Mr. Henley's phone during the previous wiretaps of TT#1,

which involve Mr. Martin. Mr. Henley is moving this Court to suppress evidence gained from those wiretaps. Mr. Martin joins in support of the lack of probable cause of those warrants when they are stripped of their factual inaccuracies and misrepresentations. As such, because the March 24, 2023 warrant for TT4 solely relied on evidence seized pursuant to those prior warrants, the March 24, 2023 wiretap warrant should also thereby be suppressed.

**2. The May 30, 2023 and June 6, 2023 Warrants Must Be Suppressed As Fruits Gained From Illegal Warrants.**

The May 30, 2023 search warrant was for the purpose of gaining access to The Shop and for law enforcement to be able to glean how to access it through a variety of methods including, but not limited to, wireless networks and duplicating key and gate code access. Aside from law enforcement's determination that Mr. Martin operates The Shop (Ex. B at 8, ¶7), the probable cause as it specifically relates to Mr. Martin, The Shop, and any illicit conduct, is nearly solely based on wire communications captured on Mr. Henley's phone (TT#1) pursuant to warrants that Mr. Henley is arguing should be suppressed. Id. at 17-27, summarizing phone calls captured between Mr. Henley and Mr. Martin and others.

**3. The May 30, 2023 and June 6, 2023 Warrants Must Be Suppressed Due To The Lack of Probable Cause.**

"For over 75 years, the Supreme Court has stated that probable cause exists when the 'facts and circumstances' before the officer are sufficient to warrant a person of reasonable caution to believe that the items sought will be found in the place to be searched." *United States v. Johnson*, 256 F.3d 895, 905 (9th Cir. 2001) (en banc), citing *Brinegar v. United States*, 338 U.S. 160, 175-176 (1949). The Supreme Court has emphasized that probable cause "demands" factual "specificity" and "must be judged according to an objective standard . . . anything less would invite intrusions upon constitutionally guaranteed rights based on nothing more than inarticulate hunches, the result this Court has consistently refused to sanction." *Terry v. Ohio*, 392 U.S. 1, 21-22,

n. 18, 22 (1968).

Information supporting the warrant must be sufficiently current to demonstrate that probable cause exists at the time of the proposed search. "Probable cause for a search requires a fair probability that contraband or evidence of a crime will be found in a particular place, based on the totality of the circumstances." *United States v. Grant*, 682 F.3d 827, 832 (9th Cir. 2012) (citation and internal quotation marks omitted). "The most convincing proof that the property in possession of the person or upon the premises at some remote time in the past will not justify a present invasion of privacy . . ." Id. (citation omitted). The deficiencies of both the May 30, 2023 and June 6, 2023 warrants were that they were based on 2 events that happened months, on February 14, 2023 and February 15, 2023, before the applications were made. There was nothing included in either affidavit that indicated any **actual** continued misconduct allegations against Mr. Martin and/or Mr. Henley between February 15, 2023 and May 30, 2023 or June 6, 2023.

**a) Phone Calls Between Mr. Martin, Mr. Henley, And/Or Mr. Robinson Regarding Any Allegations of Illicit Behavior Occurred on February 14, 2023 and February 15, 2023.**

There are no allegations made in any warrant application or in the Indictment in this matter that Mr. Martin had any part in the murder of victim R.W. However, on February 14, 2023, more than two (2) years after the murder occurred, law enforcement from Las Vegas, Nevada, descended upon Los Angeles to attempt to interview Mr. Henley as part of their murder investigation. Ex. B at ¶17[1]. Following law enforcement's visit to Mr. Henley's home, on February 14, 2023, Mr. Henley called Mr. Martin to inform him that homicide detectives had shown up at his home. After Mr.

[1] The affidavits from May 30, 2023 and June 6, 2023 largely mirror each other in their statements of facts related to events occurring on February 14, 2023 and February 15, 2023. *See* Ex. B at ¶¶19-30 and Ex. C at ¶¶39-50. Although most references will be to Exhibit B, they equally apply to the related and copied/pasted paragraphs in Exhibit C.

Martin told Mr. Henley that he was at The Shop, Mr. Henley said he would go there. Id. at ¶19. After law enforcement reviewed pole camera footage outside of The Shop, they determined that Mr. Henley was at The Shop with Mr. Martin from around 12:34 p.m. to around 6 p.m. Id. at ¶23.

On February 15, 2023, Mr. Henley again calls Mr. Martin and discusses how "Fat Boy" was shown a video. Id. at ¶28. SA Ganesh's interpretation of this conversation was that Mr. Henley was telling Mr. Martin that homicide detectives had shown "Fat Boy" a video relating to the murder of R.W. Id. at ¶29. Mr. Henley's brief phone call to Mr. Martin ends with Mr. Henley indicating that he would come see Mr. Martin in person. Id. at ¶28. After law enforcement reviewed pole camera footage outside of The Shop, they determined that Mr. Henley was at The Shop with Mr. Martin from around 2:30 p.m. until 4 p.m. on February 15, 2023.

The affidavits detail additional conversations between co-defendant Robinson and Mr. Henley on February 14, 2023 during the times at which Mr. Henley was seen at The Shop. Id. at ¶¶24-27. According to SA Ganesh's attestations, Mr. Robinson called Mr. Henley at approximately 3:59 p.m. to, as SA Ganesh interpreted it, "discuss the financial extortion of an employee of the legal cannabis dispensary ERBA." Id. at ¶24. When Mr. Henley told Mr. Robinson that he is at "the car place," and Mr. Robinson later in the conversation said "I'm on my way," SA Ganesh interpreted that to mean that Mr. Robinson would come to The Shop to further discuss the extortionate activity with Mr. Henley. Id. at ¶25. Mr. Robinson never arrived at The Shop. Then, about an hour and a half later, at approximately 5:34 p.m., Mr. Henley called Mr. Robinson while Mr. Henley was still at The Shop and used Mr. Martin's phone to conduct the call. Id. at 26. Mr. Henley never asked Mr. Robinson why he hadn't yet arrived at The Shop. Id. However, during that call, Mr. Robinson indicated that they had just left the first location and indicated he would continue on to the next spot, at which time Mr. Henley told Mr. Robinson to call him when he arrived at the next location. Id. Even though SA Ganesh correctly interprets part of the call when he states

that "[W]hen ROBINSON said, 'we just left the first spot' and 'I'm going to the next one,' [to mean that] ROBINSON was discreetly referring to the ERBA locations throughout Los Angeles to search for Victim 4," he also somehow interprets those clear statements indicating Robinson was continuing his mission to visit ERBA locations as Mr. Henley directing Mr. Robinson to meet him at The Shop. Id. at 27. No such order was made. Further, SA Roosa attempts to bolster his assertions that The Shop is used to discuss illicit activities by his claiming that the fact that Mr. Henley made that call at The Shop shows that Mr. Henley uses The Shop "as a platform to openly discuss the illegal activities of the Enterprise." Id. However, what it really shows, if Mr. Henley was in fact engaged in the alleged extortion of ERBA locations, is that Mr. Henley was willing to discuss those matters openly on the phone, in contradiction to previous assertions made by SA Ganesh. Neither conversation with Mr. Robinson took place in person at The Shop. Mr. Robinson was never seen arriving at or leaving The Shop on that day or any other day.

**b) There Are No Other Illicit Phone Calls Between Mr. Henley, Mr. Martin And/Or Mr. Robinson That Resulted In A Subsequent Meeting At The Shop After February 15, 2023.**

Mr. Henley's phone, TT1, was wiretapped from February 6, 2023 through March 7, 2023 and Mr. Henley and Mr. Martin's phones, TT1 and TT4, respectively, were wiretapped from March 27, 2023 and April 25, 2023. The affidavits for the May 30, 2023 and June 6, 2023 warrant applications are void of any further illicit conversations between Mr. Henley and Mr. Martin even though they had been wiretapped in the interim period of time. Ex. B, ¶31. Although Mr. Martin was "observed via the pole camera at [The Shop] daily," Mr. Henley was only observed on the pole camera as meeting with Mr. Martin on one other date – April 15, 2023. Id. There were no alleged illicit phone calls made preceding this get together as was the case on February 14 and 15, 2023. Even more tenuous was the inclusion of Mr. Henley's phone's GPS ping "near" The Shop on April 8, 2023, but Mr. Henley was **not** observed at The Shop on

that date via the pole camera nor did they "intercept any wire communications setting up a meeting between MARTIN and HENLEY on that date." Id. Although it was oftentimes difficult for law enforcement to ascertain a GPS location for Mr. Robinson, who utilized TT#2, there was never a GPS ping indicating that Mr. Robinson visited The Shop nor was Mr. Robinson ever seen on the pole camera at The Shop. Id. Even still, SAs Ganesh and Roosa assert that they "believe[] that the TARGET SUBJECTS continue to use and will continue to use [The Shop] as a base of operations for their racketeering activities." Id.

### c) The Information Provided In The Affidavit of the May 30, 2023 and June 6, 2023 Warrant Applications Was Stale.

Any actual information that the agents had, which were the calls and subsequent hangouts at The Shop on February 14, 2023 and February 15, 2023, was stale and could not sufficiently justify the warrants. There was no actual showing of proof that any other meetings to discuss illicit activity occurred past February 15, 2023, despite there being active wiretaps and pole cameras in place. Id.

Therefore, the two prior events triggered by Las Vegas detectives attempts to interview Mr. Henley and others between February 14, 2023 and February 15, 2023 were stale and could not support the probable cause affidavits attested to on May 30, 2023 and June 6, 2023 – more than three (3) months later. *See, e.g.*, *United States v. Underwood*, 725 F.3d 1075, 1083 (9th Cir. 2013) (upheld the Court's decision that a single delivery of crates purported to contain ecstasy three months prior to the issuance of the warrant was deemed stale and was insufficient probable cause to show participation in the larger conspiracy); *United States v. Schesso*, 730 F.3d 1040, 1047 (9th Cir. 2013) (requires a showing of a continuing pattern of misconduct or other good reasons to overcome the staleness); *Durham v. United States*, 403 F.2d 190, 195 (9th Cir. 1968) (information that paraphernalia existed in defendant's trailer four months prior to issuance of warrant was deemed stale); *United States v. Wagner*, 989 F.2d 69, 75 (2nd Cir. 1993) (holding that a six week delay in issuing a warrant rendered the

affidavit stale); *United States v. Button*, 653 F.2d 319, 325 (8th Cir. 1981) (holding that the probable cause to believe that marijuana was in a certain building one day was too stale to support probable cause eight days later); and *United States v. Neal*, 500 F.2d 305, 309 (10th Cir. 1974) (holding that probable cause showing defendant received stolen automobiles three months prior to issuance of a warrant, with no reference to defendant's continued participation, was stale).

The affidavit does nothing to show that Mr. Martin utilized The Shop for any nefarious activity outside of the alleged meetings to discuss the murder of R.W. between Mr. Martin and Mr. Henley on February 14 and 15, 2023. There is no assertion, similar to in *Underwood*, that any other illicit phone calls followed by a subsequent meeting at The Shop ever took place over the following nearly four months. Further, there is insufficient probable cause to show that Mr. Martin and Mr. Henley utilized The Shop as a base of operations for their racketeering activities. As a result, all evidence seized under the warrant should be suppressed.

## CONCLUSION

For the foregoing reasons, defendant Mark Martin respectfully requests the Court grant his motion and suppress (1) all fruits gained from the March 24, 2023 wiretap warrant, (2) all fruits gained from the May 30, 2023 search warrant, and (3) all fruits gained from the June 6, 2023 oral communications intercept warrant.

Dated: February 6, 2026

Respectfully Submitted,

KRISTEN N. RICHARDS
Anthony M. Solis, APLC

*/s/ Kristen N. Richards*

By: Kristen N. Richards
Anthony M. Solis, APLC
Attorney for Mark Martin (#3)

# DECLARATION OF MARK MARTIN

I, Mark Martin, hereby state and declare as follows:

1. I am a defendant in United States v. Henley, et al., CR 25-211-FLA pending before this Court. This declaration is made with the understanding that nothing stated in the declaration may be used against me or entered into evidence in the government's case-in-chief pursuant to the holding in Simmons v. United States, 390 U.S. 377 (1968). This declaration is submitted for the sole purpose of establishing my standing to object to the search warrant and wiretap warrant as it relates to me and the address of 1613 West 134th Street, Suite 3, Gardena, CA 90249.
2. Since some time in 2019 or 2020, I, along with a handful of other friends, utilized the space at 1613 West 134th Street, Suite 3 in Gardena, CA to store, restore, and build various classic cars that we personally owned. It was not an auto body shop otherwise open to the public.
3. This space was not a commercial business. It was more of the nature of a car club created by a group of friends who were all passionate about classic cars. We named our car club "Under the Hood Muscle Cars." There was never any business documents related to our club name ever filed with the California Secretary of State.

I declare under penalty of perjury under the laws of the United States and the State of California that the above is true and correct to the best of my knowledge and belief.

Dated: February 6, 2026

Mark Martin